## COOPERATIVE POWER ASSOCIATION, Petitioner,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### No. 83–1622.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1983.

Decided July 25, 1984.

Spiegel & McDiarmid, James N. Horwood, Ben Finkelstein, Washington, D.C., for Cooperative Power Ass'n.

Stephen R. Melton, Acting General Counsel, Barbara J. Weller, Deputy Sol., Joseph S. Davies, Jr., Atty., Washington, D.C., for respondent.

Steven W. Tyacke, James H. Anderson, Esq. Minnesota Power & Light Company, Duluth, Minn., Robert T. Hall, III, Reid & Priest, New York City, Michael B. Early, Reid & Priest, Washington, D.C., for Minnesota Power & Light Co.

On Petition for Rehearing.

Before LAY, Chief Judge, BRIGHT, Circuit Judge, and HANSON,* Senior District Judge.

PER CURIAM.

Petitioner Cooperative Power Association (CPA), seeks review of our panel decision in *Cooperative Power Association v. Federal Energy Regulatory Commission,* 733 F.2d 577 (8th Cir.1984). In that decision, the panel held that, once a rate filed with the Federal Energy Regulatory Commission (Commission) has become effective, the Commission has no power to suspend the rate even upon the granting of a rehearing. *Id.* at 580. Our decision was based in part on the Commission's assertion that it had consistently interpreted its powers as not providing for suspension of already effective rates. In its petition for rehearing, CPA cites *Indiana & Michigan Electric Co.,* 50 F.P.C. 1451 (1973), for the proposition that the Commission, on at

* The Honorable William C. Hanson, Senior District Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

least one occasion, has allowed the suspension of an effective rate.

In *Indiana & Michigan,* the Commission accepted a proposed rate change from Indiana & Michigan Electric Company (I & M) with an effective date of September 30, 1973. The new rate provisions incorporated portions of an agreement extant between the purchasers and I & M. One of the provisions incorporated into the new rates was a ratchet provision relevant to one purchaser.[1] Apparently through a clerical error, the proposed rate schedule did not take into account the effect of the ratchet provision on the proposed rates. On September 25, 1973, I & M amended the proposed rate schedule to reflect the ratchet provision. This resulted in a substantial increase in the cost of electricity to the affected purchaser. On October 12, 1973, the affected purchaser filed a motion requesting rejection of the amendment and a rehearing of the order accepting the rate change. The Commission refused to suspend the effective rates but did suspend for one day the amendment to the rate schedule.

The Commission argues that the suspension of the amendment was not the same as the suspension of a rate which the Commission had previously ordered to go into effect. The Commission also argues that the

amendment of the rate schedule just five days before it was to go into effect presented the Commission with an unusual set of circumstances which cannot be analogized to this case.

CPA contends that the Commission's actions were a suspension of an effective rate. CPA points out that the original filing did contain the ratchet provision; the rate schedule simply incorrectly computed the provision's effect on the rates. Thus, the amendment revised the ultimate computation but did not add anything of substance to the proposed rate structure.

The argument can be made that in *Indiana & Michigan* the Commission allowed suspension of an already effective rate structure. We note, however, that it is possible that the Commission and contracting party understood that the provision would not be applied in the case before the Commission because the accepted schedule did not reflect the provision.[2] It is also possible that the parties understood I & M to be waiving its right to rely on the ratchet provision by not computing it into the rate schedule. In any case, we agree with the Commission that the unusual facts of that case make it inapplicable to a case such as this where the rate schedule has been allowed to become effective as filed.[3]

---

1. "A ratchet is a billing device that sets the minimum demand cost for a utility customer at some fixed percentage of the customer's maximum demand during a particular period." *Cities of Batavia, Naperville, etc. v. Federal Energy Regulatory Commission,* 672 F.2d 64, 83 (D.C. Cir.1982).

2. As evidence of this proposition, we quote from the Commission's discussion of the impact of the ratchet provision: "[W]e recognize that future application of the proposed ratchet provision might result in rates that may be unjust, unreasonable, unduly discriminatory, preferential, or otherwise unlawful. Accordingly, ... we shall ... grant rehearing of our order of September 28, 1973, and suspend the effectiveness of the proposed ratchet provision for one day...." *Indiana & Michigan,* 50 F.P.C. at 1452.

3. CPA also directs our attention to *Interstate Commerce Commission v. American Trucking*

*Associations,* ―― U.S. ――, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984). In that case, the Supreme Court approved retroactive tariff rejections where a tariff had been submitted in "substantial violation" of rate-bureau agreements. The Court pointed out that any carrier in substantial violation of a rate-bureau agreement would be aware of the violation. The Court saw retroactive tariff rejections as "a new remedy to enforce motor-carrier rate-bureau agreements." Thus, in essence, the Supreme Court approved retroactive tariff rejection as a sanction for knowing violations of agreements. In the instant case, CPA argues that the Commission has power to suspend an effective rate on rehearing merely because it changes its mind on its discretionary suspension decision. This is very different from allowing retroactive action as a sanction for the knowing violation of an agreement. Because of this difference between the cases, we do not think that *Interstate Commerce Commission v. American Trucking Associations* is relevant to our case.

We also point out that in its order denying CPA's petition for suspension, the Commission stated that even if it had the power to suspend the effective rate it would not exercise that authority in this case. In the order denying suspension, the Commission discussed CPA's arguments in favor of suspension and CPA's failure at earlier stages of the agency process to present specific evidence as to why the proposed rates should be rejected. The Commission stated:

> Since we lack the authority to suspend a rate after it has become effective, 18 CFR 2.4(a), we cannot change our decision not to suspend and make the rate subject to refund. In any event, we find no compelling reason to change that decision since MP & L should not be forced to remain uncertain of the status of its rates because CPA failed to fully explain its concerns in a timely manner.

Order Granting Rehearing in Part, Vacating Termination of Docket, and Initiating Investigation, 22 FERC (CCH) ¶ 61,315, 61,547 (Mar. 16, 1983).

■■■ We find that, although some factors exist which favor suspension in the instant case, CPA has not presented persuasive evidence that the Commission's decision not to suspend was arbitrary or capricious. Decisions on whether to suspend effective rates depend greatly on an analysis of facts and circumstances; the Commission is better equipped than this court to make such an analysis. Assuming that it had the power to do so, the Commission's decision not to suspend the effective rates will not be reversed absent a finding of abuse of discretion. *See Public Service Commission v. Federal Power Commission*, 329 F.2d 242 (D.C.Cir.), *cert. denied*, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735 (1964). We find no abuse of discretion on the part of the Commission in the instant case.

The petition for rehearing is denied. Costs are awarded to the appellees.